IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CT-3061-BO

| | |
|---|---|
| MARK BROWN,<br>      Plaintiff,<br><br>v.<br><br>MEDICAL STAFF AT PENDER CORR.<br>INSTITUTION,<br>      Defendants. | O R D E R |

Mark Brown, a North Carolina state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. Brown made claims of deliberate indifference to a serious medical condition. The incident at issue occurred while housed at Pender Correctional Institution which is located in the Eastern District of North Carolina. Therefore, the suit was transferred to this district, having been originally filed in the Western District, and thereafter allowed to proceed. 28 U.S.C. § 1915. Named as defendants to the suit are Dr. McAloss, Ms. Blum, Ms. Smith, and Donald Polt. Defendants Blum and Polt filed a motion for summary judgment, and plaintiff has responded. The motion is ripe for determination. Defendants Smith and McAloss have not been served. Also pending before the court is plaintiff's motion for appointment of counsel, motion for stay of the statute of limitations, and motion for records. These motions are likewise ripe for ruling.

Plaintiff's allegations encompass May 14 - 29, 2007. (Compl. and response to Mot. for Summ. J.) During this time, plaintiff alleges that he was sick, vomiting, and had diarrhea. (Id.) He claims he was told that there was nothing wrong with him and told to go to class or "the hole." (Id.) He claims he filed medical requests to be seen, but the requests were refused. (Id.) He was very sick, and continued to become more ill. (Id.) He was eventually taken to the

emergency room where it was found that his large intestine had ruptured. (Id.) He underwent surgery and remained at Central Prison for several additional months. (Id.) He was in critical condition and his situation was dire. (Response, D.E. 29) He has undergone several surgeries at local community hospitals. (Compl.) He continues to have stomach problems. (Id.)[1]

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a

---

[1] In plaintiff's memorandum in support of the response to the motion for summary judgment, he clarifies the issues now before the court. (D.E. # 29) Plaintiff states:
> [T]he defendants appear to be confusing this matter with issues which aren't a part of this claim, such as the confiscation of plaintiff's extra mattress by an entirely different prison staff, and the tardiness of refilling plaintiff's medications. The instant claim is about defendants' failure to supply plaintiff with adequate medical treatment, such as would have prevented plaintiff's colon from rupturing. Plaintiff submitted copies of grievances that he filed about the mattress and medications, believing he was complying with this Court's instructions and to show that he was still being treated unfairly, but not to deliberately confuse those matters with the instant deliberate indifference action.

Thus, plaintiff is only raising the deliberate indifference claim regarding the ruptured colon from the dates May 14 through May 29, 2007. He is not raising any claim regarding the confiscation of a mattress or delay in medication after plaintiff's surgery. As such, defendants' arguments regarding these issues need not be addressed as they are not before the court.

2

genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

Defendants assert qualified immunity. Government officials are entitled to qualified immunity from civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Fourth Circuit has recognized a two-pronged qualified immunity inquiry. First, the court must "decide whether a constitutional right would have been violated on the facts alleged." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). Second, assuming the right is violated, "courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, ___ U.S.___, 129 S. Ct. 808 (2009). A court has discretion to decide which step in the two-prong test to analyze first. Pearson, 129 S. Ct. at 821.

"Because qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has

been specifically encouraged." Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992). The Fourth Circuit clarifies "[t]his does not mean, however, that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment." Id. Defendant officials have the burden of pleading and proving qualified immunity. See, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 332 n.10 (4th Cir. 2009); Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). In order to be liable, the official must have actual knowledge or awareness of the need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The indifference must be objectively harmful enough to establish a constitutional violation. See id. at 837–40. Disagreement with medical staff over the course of treatment is not sufficient to state an Eighth Amendment deliberate indifference claim. See, e.g., De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

The medical records indicate plaintiff was thirty years of age in May 2007. (Answer Ex. E) Medical records attached to the answer begin on May 21, 2007. The medical records attached to the answer are not in chronological order. The date May 21, 2007, appears at the top of a page. These records note plaintiff was seen by a nurse on May 21, 2007. On that date, plaintiff declared a medical emergency in which he complained of headache and diarrhea. (Aff. Supp. Defs' Summ. J. Motion, Stover Aff. ¶ 8) The nurse noted plaintiff's vital signs were within

4

Case 5:09-ct-03061-BO   Document 34   Filed 03/03/11   Page 4 of 8

normal limits, without fever, and no palpable abdominal pain. (Id.) He was given analgesic and antidiarreal medications and increased fluids and told to return if symptoms worsened. (Id.)

On May 22, 2007, plaintiff submitted a sick call request and was seen by a nurse. (Id., ¶ 9) Plaintiff complained of vomiting and diarrhea. (Id.) His vital signs were within the normal limit, he remained without fever; however, he exhibited some generalized abdominal pain. (Id.) He was given anti-nausea medication, restricted to clear liquids, taken off work, and told to use antidiarrheal medication as instructed. (Id.)

On May 23, 2007, plaintiff was seen by a nurse and a physician. (Id., ¶ 10 and 11) The nurse noted the vomiting had stopped after taking the anti-nausea medication, but that the antidiarrheal medication had not provided relief. (Id.) Plaintiff's vitals were within normal limits, and was without fever. (Id.) Later that day, when he was seen by the physician, after referral by the nurse, the physician noted abdominal pain, diagnosed gastroenteritis, and added a different antidiarrheal medication, Lomotil. (Id. at ¶ 11)

On May 27, 2007, plaintiff was seen by a nurse. (Id., ¶ 13) Plaintiff continued to complain of the nausea and diarrhea. (Id.) His vital signs remained in the normal limits, he had no fever, his bowel sounds were normal, but he again stated he had generalized abdominal pain. (Id.) A urine check found no urinary tract disease, hepatitis, or other illness. (Id.) The urine specific gravity was 1.020 which indicated dehydration was unlikely. (Id.) Plaintiff was treated with anti-nausea and antidiarrheal medications and told to return as needed. (Id.) Plaintiff was not satisfied and sought intravenous fluids. (Id.)

On May 29, 2007, plaintiff was seen by a nurse at three different times. (Id. ¶ 14, 15, and 16) Plaintiff was first seen at 8:20 a.m., complaining of the same symptoms about which he had

been explaining for several days now. (Id., ¶ 14) At 6:30 p.m., plaintiff continued to have no fever, but his pulse and blood pressure were elevated. (Id., ¶ 15) The nurse called the unit physician who ordered new and increased medications. (Id.) After this treatment, plaintiff's pulse rate subsided and he returned to his dormitory. (Id.) An hour later, he was resting comfortable. (Id.) However, at 11:30 p.m., plaintiff was brought to the prison medical department by wheelchair. (Id., ¶ 16) His symptoms had worsened, the nurse telephoned the on-call provider, and plaintiff was taken to the local hospital. (Id.)

Plaintiff suffered from a serious medical condition, a "colon rupture." Dr. Stover describes a colon rupture as "a catastrophic medical event which renders the patient critically ill almost instantaneously." (Id. ¶ 7) He states it is "an extremely unusual event for a person of Plaintiff's age and in apparently good health with no history of serious illness." (Id.) In Dr. Stover's opinion, the colon rupture was not caused by acts or omissions of Pender Medical staff. (Id. ¶ 17) Dr. Stover states that the complaints and examinations were consistent with a diagnosis of gastroenteritis, for which the appropriate medications were provided. (Id.) He continues that as late as the 11:30 p.m., May 29, 2007, nurse visit, the symptoms presented gave no indication to suspect or anticipate colon rupture. (Id.) (this must be a typographical error given plaintiff was brought to medical at 11:30 p.m. by wheelchair and sent to the hospital) In Dr. Stover's opinion, if plaintiff's colon had been leaking before May 29, 2009, plaintiff would have had a fever and been critically ill. (Id.) Furthermore, "[i]t is more likely than not [Dr. Stover states] that Plaintiff's colon ruptured between 7:00 p.m. on 29 May 2007, when the nursing staff last checked on his status and 11:30 p.m. on the same evening, when he last presented to the nursing staff because of sudden and marked worsening of his symptoms." (Id.) "The marked

6

worsening of Plaintiff's symptoms is consistent with catastrophic colon rupture in a patient of the age of thirty years and in apparent good health, as was Plaintiff." (Id.) Dr. Stover states that the hospital records of plaintiff's surgery give no clear indication for the colon rupture. (Id.) However, the record does not contain the hospital records. Again, the only medical records provided to the court are the Pender prison records covering a time period from May 21 through November 25, 2007. No outside records are included.

Plaintiff refutes Dr. Stover's opinion by stating that the hospital physician explained "the ruptured colon would have been avoided with administering of antibiotics and other simple, inexpensive treatments. More than two weeks elapsed between Plaintiff's first request for medical attention and his receiving it." (D.E. # 29, p. 2)

In reviewing the motion for summary judgment, it is clear that plaintiff suffered from a serious medical condition, in fact, defendants' expert labeled the medical event, catastrophic. What remains a material fact at issue is whether or not plaintiff sought treatment prior to May 21, 2007. Defendants do not address May 14 through 21, 2007. The copies of the record, including sick and emergency requests for medical care, begin on May 21st with no statement or indication of prior records. Further, defendants do not include hospital records, but reference them. If the hospital records indicate antibiotics should have been given to prevent the rupture, as indicated by plaintiff in contravention of Dr. Stover's opinion, this information would be beneficial to the court in conjunction with the initial onset of the illness.

Thus, at this time, the court must DENY summary judgment without prejudice (D.E. # 20), in part based on an incomplete record, to make an appropriate determination. Defendants may file a second summary judgment with an expanded record, to which plaintiff may respond.

7

The "motion to subpoena records" (D.E. # 26) is ALLOWED in that it is a request for NCPLS to release the medical records included in his file at NCPLS. The motion for appointment of counsel (D.E. # 27) is ALLOWED in that NCPLS may be in a position to obtain the proper names of defendants who have not been served. The motion for appointment of counsel is DENIED in all other aspects. The motion for stay of statute of limitations (D.E. #28) is DENIED as premature given the matter remains open and ongoing. Defendants are given 20 days to file a second summary judgment motion with an expanded record. Plaintiff is given 10 days thereafter to respond. Further, NCPLS is ORDERED to provide plaintiff with his medical records in their possession within 10 days of this order. NCPLS is also instructed to provide the names of the unserved defendants to the court within the same 10 days if such information is obtainable by NCPLS through review of their file in this matter. The Clerk is DIRECTED to serve NCPLS with a copy of this order.

SO ORDERED, this 3 day of March 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE