IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CT-3061-BO

| | | |
|---|---|---|
| MARK BROWN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| MEDICAL STAFF AT PENDER CORR. | ) | |
| INSTITUTION, | ) | |
|     Defendants. | ) | |

Mark Brown, a North Carolina state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. Brown made claims of deliberate indifference to a serious medical condition, a ruptured colon, while housed at Pender Correctional Institution ("Pender CI"). On March 3, 2011, the court denied without prejudice defendants' (Blum and Polt) motion for summary judgment with instruction to expand the medical record. At that time, two defendants, Blum and Polt, had been properly served while two defendants, Dr. McAloss and Ms. Smith, had not been served. The court also ordered NCPLS to provide plaintiff with the medical records they had in their possession, as well as provide the proper name of the unserved defendants.

NCPLS filed a response on March 10, 2011, which contained affirmation that the records had been transmitted to plaintiff. The response also provided the name and address of Dr. Micklos. It does not appear form the docket, however, that the clerk's office ever issued summons for Dr. Micklos, nor did they submit the response to the court for review. NCPLS was unable to determine the actual name of Ms. Smith and a stipulation of dismissal with prejudice has been entered. (D.E. # 54)

Properly before the court, is the motion for summary judgment with an expanded record (D.E. # 43), defendants' motion for an extension of time to file the supplemental motion (D.E. # 37), two motions for protective orders (D.E. # 46 and # 50), and plaintiff's second motion for appointment of counsel (D.E. # 40). These motions are ripe for ruling.

i. <u>Allegations</u>

> Plaintiff's allegations encompass May 14 - 29, 2007. (Compl. and response to Mot. for Summ. J.) During this time, plaintiff alleges that he was sick, vomiting, and had diarrhea. (Id.) He claims he was told that there was nothing wrong with him and told to go to class or "the hole." (Id.) He claims he filed medical requests to be seen, but the requests were refused. (Id.) He was very sick, and continued to become more ill. (Id.) He was eventually taken to the emergency room where it was found that his large intestine had ruptured. (Id.) He underwent surgery and remained at Central Prison for several additional months. (Id.) He was in critical condition and his situation was dire. (Response, D.E. 29) He has undergone several surgeries at local community hospitals. (Compl.) He continues to have stomach problems. (Id.)

(March 3, 2011, Order at # 34).

ii <u>Pending Motions</u>

    a. Appointment of Counsel

There is no constitutional right to counsel in civil cases absent "exceptional circumstances." <u>Cook v. Bounds</u>, 518 F.2d 779, 780 (4th Cir. 1975); <u>Whisenant v. Yuam</u>, 739 F.2d 160, 163 (4th Cir. 1984), <u>abrogated on other grounds by Mallard v. United States Dist. Court for the S. Dist. of Iowa</u>, 490 U.S. 296, 300 n.3 (1989). The existence of exceptional circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." <u>Whisenant</u>, 739 F.2d at 163 (quotation omitted). Brown has asserted straightforward claims, and the case does not appear to present exceptional circumstances. The motion is denied (D.E.# 40).

2

b.  Extension of Time by Defendants to File the Supplemental Motion

Defendants Blum and Polt sought an enlargement of time to respond to the court's order directing them to expand the record. For good cause shown, the extension of time to file and serve the supplemental summary judgment materials is ALLOWED (D.E. # 37).

c.  Protective Orders

Next, the court addresses defendants' motions for a protective order (D.E. # 46 and # 50). Defendants seek a protective order from discovery because they have raised the defense of qualified immunity. (Mem. Supp. Mot. Prot. Order at 1-5).

A ruling on a defendant's claim of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see Harlow v. Fitzgerald, 457 U.S. 800, 817–18 (1982). Accordingly, defendants are entitled to resolution of their defense of qualified immunity before being subject to the burdens of litigation, including discovery. See, e.g., Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987); Harlow, 457 U.S. at 817–18; Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (unpublished). Therefore, the court grants defendants' motions for a protective order (D.E. # 46 and # 50).

d.  Motion for Summary Judgment

The court incorporates by reference the March 3, 2011 order, including the legal standards for qualified immunity, summary judgment, and deliberate indifference to a serious

medical condition. (D.E. # 34) The court shall specifically include the following from that order for clarity.

> The medical records indicate plaintiff was thirty years of age in May 2007. (Answer Ex. E) Medical records attached to the answer begin on May 21, 2007... These records note plaintiff was seen by a nurse on May 21, 2007. On that date, plaintiff declared a medical emergency in which he complained of headache and diarrhea. (Aff. Supp. Defs' Summ. J. Motion, Stover Aff. ¶ 8) The nurse noted plaintiff's vital signs were within normal limits, without fever, and no palpable abdominal pain. (Id.) He was given analgesic and antidiarreal medications and increased fluids and told to return if symptoms worsened. (Id.)
>
> On May 22, 2007, plaintiff submitted a sick call request and was seen by a nurse. (Id., ¶ 9) Plaintiff complained of vomiting and diarrhea. (Id.) His vital signs were within the normal limit, he remained without fever; however, he exhibited some generalized abdominal pain. (Id.) He was given anti-nausea medication, restricted to clear liquids, taken off work, and told to use antidiarrheal medication as instructed. (Id.)
>
> On May 23, 2007, plaintiff was seen by a nurse and a physician. (Id., ¶ 10 and 11) The nurse noted the vomiting had stopped after taking the anti-nausea medication, but that the antidiarrheal medication had not provided relief. (Id.) Plaintiff's vitals were within normal limits, and was without fever. (Id.) Later that day, when he was seen by the physician, after referral by the nurse, the physician noted abdominal pain, diagnosed gastroenteritis, and added a different antidiarrheal medication, Lomotil. (Id. at ¶ 11)
>
> On May 27, 2007, plaintiff was seen by a nurse. (Id., ¶ 13) Plaintiff continued to complain of the nausea and diarrhea. (Id.) His vital signs remained in the normal limits, he had no fever, his bowel sounds were normal, but he again stated he had generalized abdominal pain. (Id.) A urine check found no urinary tract disease, hepatitis, or other illness. (Id.) The urine specific gravity was 1.020 which indicated dehydration was unlikely. (Id.) Plaintiff was treated with anti-nausea and antidiarrheal medications and told to return as needed. (Id.) Plaintiff was not satisfied and sought intravenous fluids. (Id.)
>
> On May 29, 2007, plaintiff was seen by a nurse at three different times. (Id. ¶ 14, 15, and 16) Plaintiff was first seen at 8:20 a.m., complaining of the same symptoms about which he had been explaining for several days now. (Id., ¶ 14) At 6:30 p.m., plaintiff continued to have no fever, but his pulse and blood pressure were elevated. (Id., ¶ 15) The nurse called the unit physician who ordered new and increased medications. (Id.) After this treatment, plaintiff's pulse rate subsided and he

4

returned to his dormitory. (Id.) An hour later, he was resting comfortable. (Id.)
However, at 11:30 p.m., plaintiff was brought to the prison medical department by
wheelchair. (Id., ¶ 16) His symptoms had worsened, the nurse telephoned the
on-call provider, and plaintiff was taken to the local hospital. (Id.)

Plaintiff suffered from a serious medical condition, a "colon rupture." Dr. Stover
describes a colon rupture as "a catastrophic medical event which renders the patient
critically ill almost instantaneously." (Id. ¶ 7) He states it is "an extremely unusual
event for a person of Plaintiff's age and in apparently good health with no history of
serious illness." (Id.) In Dr. Stover's opinion, the colon rupture was not caused by
acts or omissions of Pender Medical staff. (Id. ¶ 17) Dr. Stover states that the
complaints and examinations were consistent with a diagnosis of gastroenteritis, for
which the appropriate medications were provided. (Id.) He continues that as late as
the 11:30 p.m., May 29, 2007, nurse visit, the symptoms presented gave no
indication to suspect or anticipate colon rupture. (Id.) (this must be a typographical
error given plaintiff was brought to medical at 11:30 p.m. by wheelchair and sent to
the hospital) In Dr. Stover's opinion, if plaintiff's colon had been leaking before
May 29, 2009, plaintiff would have had a fever and been critically ill. (Id.) . . . .

Plaintiff refutes Dr. Stover's opinion by stating that the hospital physician explained
"the ruptured colon would have been avoided with administering of antibiotics and
other simple, inexpensive treatments. More than two weeks elapsed between
Plaintiff's first request for medical attention and his receiving it." (D.E. # 29, p. 2)

(March 3, 2011, Order at # 34).

Now before the court are additional medical records which the court shall rely on to conclude this summary judgment determination. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998) (The court can rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment.); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001) (same); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982)(same).

Defendants' summary judgment materials show plaintiff's first complaint to the medical staff at Pender CI was made at 8:07 a.m. on May 21, 2007. Plaintiff complained of "diarrhea all night." (Answer Ex. B (Doc. 18-5 at 8).) Before that date, plaintiff had sought medical attention

5

only at prison facilities other than Pender CI.. Before May 2007, plaintiff visited a DOC nurse at Marion Correctional on February 20, 2007. He also presented to medical staff the day before, February 19, 2007. At those medical visits, plaintiff complained of, and was treated for, flu-like symptoms. He did not complain of intestinal distress. (Supplemental Aff. ¶¶ 8-9 & Ex. A.)

In April 2007, plaintiff was transferred from Avery Mitchell Correctional Institution to Pender CI. The transfer records do not indicate that plaintiff was not taking any medication or suffered from any chronic disease. The record does not indicate that any laboratory tests, x-rays, or medical appointments were pending. (Id. ¶ 10 & Ex. B.).

Plaintiff's medical records show his first report of intestinal distress symptoms to medical staff at Pender CI occurred at 8:07 a.m. on May 21, 2007. Plaintiff reported that his symptoms began during the previous night. (Id. ¶ 12.) After plaintiff's first report to Pender CI medical staff, he submitted his first DOC sick call request form on the next day, May 22, 2007, at Pender CI. He requested followup from a medical emergency "yesterday" (May 21, 2007) and complained that for thirty-six hours he had been unable to keep food down. (Answer Ex. E (Doc. 18-5 at 2).)

Plaintiff was seen on May 21, 2007 (by a nurse); on May 23 (by nurse and thereafter by unit physician); on May 27 (by nurse), and on May 29 (8:20 a.m. by nurse, 6:30 p.m. by nurse; and 11:30 p.m. by nurse). (Stover Aff. ¶¶ 11, 13-16; Answer Ex. E (Doc. 18-5 at 2, 3, 4, 5, 6, 7 & 8).) Plaintiff obtained partial relief from the treatment provided. The last time plaintiff obtained any relief was on May 29, 2007, at 6:30 p.m. He was provided with parental hydroxyzine and additional phenergan. After this treatment, plaintiff's elevated pulse rate subsided and he was returned to his dormitory. When checked an hour later, he was resting comfortably. (Id. ¶ 15.)

6

About four hours later, he was brought via wheelchair to the medical unit and, because of his markedly worse symptoms, was sent to the Pender Memorial Hospital ("PMH") emergency room. (Id. ¶ 16.)

At 6:40 a.m. on May 30, 2007, at PMH, a CT scan of plaintiff's abdomen was done. (Supplemental Aff. ¶ 16 & Ex. C-4.) The radiologist noted, "Obstruction as well as obstipation are among the considerations." (Id. Ex. C-4.) At that time, there was no evidence of bowel rupture. (Id. ¶ 16.) At 11:45 a.m. the following morning, a second scan of plaintiff's abdomen was done. In this scan, widespread free air was observed in plaintiff's peritoneal cavity. The radiologist's note was "Overnight appearance of pneumoperitoneum." (Id. Ex. C-5.) The appearance of free air indicates bowel rupture. Plaintiff was transferred to New Hanover Regional Medical Center ("NHRMC"). (Id. ¶ 16; Ex. C-3.)

Plaintiff's hospital records show obstipation, which is severe constipation leading to bowel obstruction. (Id. ¶ 17 & Ex. C at 2.) This condition, known as Ogilvie Syndrome, is extremely rare in an otherwise healthy thirty-year-old man. (Id.) Plaintiff was admitted to NHRMC at 12:43 p.m. on May 31, 2007. (Id. ¶ 19.) His admitting diagnosis was bowel obstruction. (Id.) At 8:14 p.m. a CT scan of his abdomen was made and compared to the scans made at PMH. (Id.) The radiologist noted intra peritoneal free air. (Id.)

Exploratory surgery was performed and the obstruction was removed. (Id. ¶ 20.) It also was noted that plaintiff's bowel was friable and had to be removed piecemeal. (Id.) After surgery, plaintiff remained in the NHRMC intensive care unit until June 6, 2007, when he was transferred to a floor bed. (Id.) He developed an infection and diarrhea, which were treated successfully. (Id.) On June 13, 2007, plaintiff was transferred to Central Prison Hospital. (Id.)

7

In Dr. Stover's expert opinion, Plaintiff received appropriate medical care at Pender CI, and his colon rupture was not caused by acts or omissions of Pender CI medical staff. (Id. ¶ 21.) Plaintiff's complaints and nursing staff's repeated examinations of him were consistent with a diagnosis of gastroenteritis and failed to suggest plaintiff was developing obstipation that would result in colonic rupture. (Id.)

The medical records (specifically the hospital records) indicate plaintiff's colon ruptured after he was admitted to the PMH emergency room. (Supp. Aff., Ex. C) Plaintiff's obstipation and colon rupture constituted extraordinary medical events that could not have been anticipated by Pender CI medical staff. Only after PMH staff observed free air in plaintiff's peritoneal cavity was obstipation confirmed. (Id. ¶ 16.) Hospital records give no indication why plaintiff, who was young and otherwise healthy, developed an obstipation to the point of colonic necrosis and rupture. (Id. ¶ 21.)

While it is clear that plaintiff suffered from a serious medical condition that was life threatening, what is also clear is that defendants were not deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment. In order to be liable, the official must have actual knowledge or awareness of the need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). From the record, it is obvious that this was an extraordinary medical situation. Plaintiff was receiving proper and professional medical care and at a point in time where relief was not obtainable through the medical measures prescribed by the medical personnel at Pender, outside medical care was sought immediately. Plaintiff's colon does not appear to have ruptured while at Pender, but rather once he was hospitalized. Furthermore, if there was a call for a different course of treatment prior to the rupture itself, this oversight amounts to nothing more

8

Case 5:09-ct-03061-BO   Document 55   Filed 02/03/12   Page 8 of 9

than mere negligence in diagnosis or treatment and does not state a constitutional claim. Estelle, 429 U.S. at 105–06. Therefore, the defendants are cloaked with qualified immunity and summary judgment is appropriate.

iii. Conclusion

For the above stated reasons, the motion for an extension of time in which to file the supplemental motion is ALLOWED (D.E. # 37); the motion for appointment of counsel is DENIED (D.E. # 40); the protective orders are ALLOWED (D.E. # 46 and # 50); and defendants' summary judgment is GRANTED and the case is DISMISSED (D.E. # 43). Furthermore, given the detailed medical records, conclusions of law, and finding of fact, Dr. Micklos is DISMISSED from the suit and service is unnecessary.

SO ORDERED, this ⎯⎯ day of February 2012.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE